VERMONT SUPERIOR COURT
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



ENVIRONMENTAL DIVISION
Docket No. 23-ENV-00116

| 181 Parker Hill Road Application | MERITS DECISION |
|---|---|

This is an appeal of a September 18, 2023 decision of the Town of Springfield (Town) Development Review Board (DRB) approving an application submitted by Michael Jasinski (Applicant) for conditional use approval to conduct cannabis cultivation as a home business within Applicant's existing garage (the Garage) at property located at 181 Parker Hill Road, Springfield, Vermont (the Property). Christopher and Cynthia Berg, Coriander Santagate and Emily Stringham, Anthony and Kathleen Vertrano, and Lucia Zachowski (together, Appellants) appealed the approval to this Court.

In this matter, each of the appellants are self-represented. Applicant is represented by Charles O.M. Peel, Jr. Esq. The Town is represented by Stephen S. Ankuda, Esq.

This Court held a one-day merits hearing on January 9, 2025 via the WebEx platform. All parties participated in the hearing either through counsel or by self-representation.

### Statement of Questions

There are three Questions before the Court. They ask:

1. Where: a) a home business application is for cultivation of cannabis in a garage no part of which is used for dwelling purposes, and b) Springfield's Land Use Development Ordinance (LUDO) §§ 30-6 and 30-596(a) limit accessory buildings to those which are "incidental and subordinate" to the principal use or structure and "only used for vehicle parking, storage and primarily [sic] building access," and require that a home business be secondary to use of the building for dwelling purposes, should the home business application be denied?

2. Will the applicant's proposed indoor cultivation and processing of cannabis in a garage result in undue adverse impact under 24 V.S.A. § 4414(3)(A)(ii) and Springfield LUDO § 30-723(d)(2) where: a) contrary to police warning, the applicant advertises to the public the location of the cannabis cultivation and processing, b) the location is surrounded, on three sides, by neighbors' residential properties that are

part of a national historic district; c) 7 V.S.A. § 869 prohibits treatment of indoor cannabis cultivation and processing as agriculture, and d) the purpose of applicant's zoning district is rural and agricultural?

3. Alternatively, assuming that the proposed land use is granted a zoning permit, should applicant's permit be further conditioned by the Court, including but limited to the following conditions in addition to the conditions imposed by the Development Review Board:

D.4. Applicant shall not:
a. use or post, or authorize any person or entity to use or post, any signage or advertising indicating any activity concerning cannabis at 181 Parker Hill Road, Springfield, VT;
b. sell, or advertise the sale of, cannabis or cannabis-related products at 181 Parker Hill Road, Springfield, VT; or
c. post anywhere on the Internet any indication of activity concerning cannabis at 181 Parker Hill Road, and[;]
d. remove from the Internet any such current indication.
D.5. Applicant shall obtain and use a post office box for all mail communications concerning cannabis cultivation or processing at 181 Parker Hill Road, Springfield, VT.
D.6. Applicant shall not have any mail or other delivery by Federal Express, UPS, courier, or other delivery service addressed to Parker Hill Cannabis or any other address referring or indicating cannabis or marijuana.

Amended Statement of Questions (filed on January 2, 2024).[1]

## Factual Findings

1. Michael Jasinski (Applicant) owns and resides at property having an address of 181 Parker Hill Road, Springfield, Vermont (the Property).

2. The Property is within the RA-5 Zoning District.

3. Home businesses are a conditional use in the RA-5 District.

4. Applicant owns additional parcels on Parker Hill Road, located behind the Property.

5. The Property contains Applicant's home and a garage connected to the main home by a breezeway (the Garage).

6. The breezeway's roof connects both the Garage to the main home and concrete stairs to the side porch.

7. The Garage is a two-story structure. The first floor is concrete with a single-car garage. The second floor is connected by an internal set of stairs and has a wood floor with carpet.

---

[1] The initial Statement of Questions filed in this matter was signed by all Appellants. The amended Statement of Questions was filed on behalf of only the Vertranos, but formally withdrew the earlier Statement of Questions. No Appellant has objected to this withdrawal. No other appealing party has filed a Statement of Questions.

8. The Garage has no indoor plumbing.

9. Together, the Garage is approximately 660 square feet between both floors.

10. Applicant proposes to cultivate cannabis pursuant to a Tier 1 Cannabis Cultivation indoor license (the License) within the Garage (the Project).

11. The License is issued to Parker Hill Cannabis LLC (Parker Hill Cannabis). Applicant is the sole member.

12. Parker Hill Cannabis also has a license from the Springfield Cannabis Control Commission.

13. This application does not contemplate cultivation occurring outside of the Garage.

14. The Garage's size is within that which is allowable by the License, which allows plants to be grown in an area of up to 1000 square feet.

15. Applicant proposes to use both floors of the Garage for cultivation, but not the entire square footage of the structure.

16. Hours of operation are generally to be 3 to 4 hours a day during which Applicant will be working.

17. Applicant is presently the only employee.

18. There may be two additional employees during harvest times.

19. No exterior modifications are proposed at the Property beyond motion sensing lights and cameras to replace those that are existing for security purposes.

20. Applicant proposes no landscaping changes to the Property.

21. Applicant proposes no signage.

22. Parker Hill Cannabis has a website.

23. Applicant does not intend to advertise the location of the business, but he is required to disclose where the cannabis came from pursuant to State requirements. This information is available in certain locations of the website.

24. The Town does not regulate advertising business operations through zoning.

25. The Town does not regulate mail communications or activities.

26. Applicant has begun cultivating cannabis on-site.

27. The Town has not received complaints regarding odors from the Property.

28. The Vertranos live at 315 Parker Hill Road, Springfield, Vermont (the Vertrano Property).

29. The Vertrano Property abuts the Property on all three sides.

30. There is a dispute as to how much of the Vertrano Property is within the Parker Hill Historic District and whether the Property itself is within, in whole or in part, the Parker Hill Historic District. This dispute is not material to the application before the Court.

31. The Parker Hill Historic District is a historic district within the National Register.

32. The Town has no land use ordinances that are specific to the Parker Hill Historic District.

33. No other Appellant other than Mrs. Vertrano testified at trial, and we do not have direct evidence of where they live relative to the Property.

34. No Appellant testified as to the Project's impacts on any of their interests, such as odors, lights, traffic, or another interest that is protected by the Regulations.

35. On July 11, 2023, Applicant applied for a conditional use permit for indoor cannabis cultivation as a home business at the Property.

36. The application is subject to the Springfield Land Use Development Regulations (the Regulations).

37. Following a warned public hearing, the DRB approved the application.

38. Appellants timely appealed that decision to this Court.

## Discussion

### I.     Question 1: Home Business

The Regulations define a "home business" as "a business carried on in a portion of a dwelling/residence or in an accessory structure to a dwelling/residence." Regulations § 30-6 ("Home business"). A home business must "be carried on wholly within the dwelling/residence or accessory structures to the dwelling/residence . . .." Regulations § 30-596(2). Oddly and conversely, however, the Regulations define "accessory building/structure," among other things as being "only used for parking, storage, or primarily building access." Regulations § 30-6 ("Accessory building/structure"). Examples of accessory structures include "garages, garden and tool sheds, and playhouses." Id.[2]

When interpreting a zoning ordinance, the Court's goal is to effectuate the intent of the drafters, first by looking to the plain meaning of the regulation at issue and the "whole of the ordinance." In re Tyler Self-Storage Unit Permits, 2011 VT 66, ¶ 13, 190 Vt. 132 (quotation omitted). In construing statutory or ordinance language, our paramount goal is to implement the intent of its

---

[2] The Vertrano's post-trial brief takes issue with the Court's Entry Order dated May 8, 2024, in which we noted that "playhouses" are not typically only used for "parking, storage, or . . . access." Applicant does not address this aspect of the Court's prior ruling in his post-trial briefing. While the Court disagrees with the Vertrano's proffered interpretation of the term as being contrary to the rules of construction, because we conclude that home businesses use of an accessory structure is a more specific exception to the general accessory structure use definition, we need not address the dispute.

drafters. Morin v. Essex Optical/The Hartford, 2005 VT 15, ¶ 7, 178 Vt. 29. We will therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." In re Laberge MotoCross Track, 2011 VT 1, ¶ 8, 189 Vt. 578; see also In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49, 195 Vt. 586 (1986)) ("Our goal in interpreting [a zoning regulation], like a statute, 'is to give effect to the legislative intent.'"). Moreover, we will not interpret zoning regulations in ways that lead to irrational results. See Stowe Club Highlands, 164 Vt. 272, 280 (1995) (refusing to interpret regulation such that it leads to irrational results). Finally, because zoning regulations limit common law property rights, we resolve any uncertainty in favor of the property owner. Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22. With these provisions of interpretation in mind, we turn to the applicable regulatory and statutory provisions.

The Regulations conflict with respect to the definition of a "home business" and that of an "accessory building/structure." Generally, accessory structures can only be used for "parking, storage, or primarily building access." Regulations § 30-6 ("Accessory building/structure"). Despite this, more specific provisions of the Regulations state that a home business is a "business" that may specifically occur within, in relevant part "an accessory structure to a dwelling/residence." Regulations § 30-6 ("Home business").

When the Court is presented with two conflicting provisions in a zoning regulation, "the specific provision is held as an exception to the general provisions." In re Pederzani Administrative Appeal, 2024 VT 82, ¶ 12 (citing In re Lathrop Ltd. P'Ship I, 2015 VT 49, ¶ 31. 199 Vt. 19. As between the "accessory building/structure" definition and the "home business" provisions, the home business provisions are more specific than the general definition of "accessory building/structure." Thus, the home business definition is an exception to the general provision that limits use of an accessory structure.

The definition of "accessory building/structure" generally sets forth what such an accessory structure may be in the Town. To emphasize this conflict, "home businesses" are a more specific type of use that may occur within accessory building or structure and are specifically authorized to occur within such accessory structures.[3] This is despite the fact that the general "accessory

---

[3] To the extent that Appellants argue that the only way to read the Regulations is to remove the language: "be carried on wholly within . . . accessory structures to the dwelling/residence . . ." from § 30-596(2), such an assertion violates multiple rules of regulatory construction, including the requirements that we give effect to the whole of the regulations and we avoid rendering any portion of the regulations "mere surplusage" or interpreting the regulations in a manner that would lead to a "absurd result." Regulations § 30-596 is clear and unambiguous, home businesses may occur in accessory structures.

building/structure" definition does not address this fact and instead states that such structures may only be used for "parking, storage or primarily building access." Read on its own, the "accessory building/structure" definition appears to prohibit home businesses. This cannot be the case when considering the whole of the Regulations.

It is undisputed that that the Garage, absent the Project, is an accessory structure.[4] It is undisputed that, in addition to the Garage, the Property contains Applicant's primary residence, which he will retain and continue to use as such. It is undisputed that the Garage itself is incidental and subordinate to the primary residence at the Property. Thus, a home business may occur within the Garage.

The Court must now consider whether the Project qualifies as a home business.[5]

Pursuant to Regulations § 30-596, a home business must meet certain conditions. They are:

> (1) The home business is clearly secondary to the use of the building for dwelling purposes, and shall be operated by a resident of the dwelling;
> (2) The home business shall be carried on wholly within the dwelling/residence or accessory structures to the dwelling/residence, and shall occupy no more than 1,100 square feet of floor space home businesses carried on wholly within the dwelling/residence are limited to 50 percent of the dwelling area;
> (3) The home business shall employ no more than three on-premises employees who are not residents of the premises;
> (4) There shall be no exterior displays other than those permitted under these ordinances;
> (5) There shall be no exterior storage of materials, no exterior indication of the home business and no variation from the residential character of the principal structure;
> (6) Parking shall be provided off-street in accordance with section 30-658 of these ordinances which states: "…home businesses shall provide off-street parking for each non-resident employee and sufficient enough to accommodate all customers, but not less than one customer space";
> (7)A home business shall not include service or repair of motor vehicles or small combustible engine repair in medium density residential and high-density residential zoning districts; and

---

[4] The parties in the course of this action have disputed whether the Project will occur within the dwelling because the Garage is connected to the primary residence by a breezeway. It is not, and cannot be, legitimately disputed that the Garage, absent the Project, is an accessory structure. We therefore conclude that the Project may occur within the Garage subject to conditional use review. We do not address whether the Garage is a part of the primary dwelling because of the breezeway. For the same reason we need not address the parties' dispute as to whether the use limitations on accessory structures, generally, apply to a new use of an otherwise proper accessory structure.

[5] While not directly raised by Question 1, the parties address the issue, and it is likely intrinsic to the Question. See In re Jolley Assocs., 2006 VT 132, ¶ 9, 181 Vt. 190.

(8) Objectionable circumstances such as noise, vibration, smoke, odors, or electrical disturbance shall not be produced.
(9) A sign not to exceed six square feet is allowed per section 30-677.

Regulations § 30-596(1)—(9).

Applicant's project for cannabis cultivation, pursuant to the terms of relevant licensure, is incidental and subordinate to the primary residential use of the Property and is therefore consistent with the Regulations' definitions for both accessory structures and home businesses.[6] The use is wholly inside the Garage[7] and uses less than its 660 square feet. Applicant is the sole full-time employee of the business, and he anticipates that business operations will occur for only a few hours a day. Potentially two more employees may be hired during harvest. There are no external changes required to support the business. Existing exterior lighting and cameras have been updated to improve security. No exterior signage, displays, or storage is proposed. Thus, the Project will require no variation from the existing residential nature of the Property, which includes Applicant's residence and the Garage. There is no evidence that the Project will produce noise, vibration, smoke, or electrical disturbances. To the extent that any Appellant challenged alleged odors from the Project, there is no evidence that such odors will occur from the Project or will be in any way detectable outside of the Property.[8] This use and scale is such that the project is clearly secondary to the primary residential use of the Property.

[6] Appellants argue that the relevant licensure is issued to Parker Hill Cannabis, and not specifically to Applicant. Applicant is the sole member of Parker Hill Cannabis and is the owner of the Property. Therefore, we find this distinction to be of no import to the Court's analysis of the zoning permit. Further, to the extent that Appellants argue that the licenses were issued in the improper order, such an argument is outside the scope of this Court's jurisdiction in the narrow context of our de novo review of the application. See, e.g., In re Torres, 154 Vt. 233, 235 (1990). ("The reach of the superior court in zoning appeals is as broad as the powers of a zoning board of adjustment or a planning commission, but it is not broader.").

[7] Appellants argue that the application sought approval for outdoor cultivation or that some level of the Project is outside. This is not supported by evidence before the Court including Applicant's testimony and exhibits which show that the application is for indoor cultivation only. Appellants' assertion appears to be based on their confusion regarding what the application includes. When Appellants reached out to the Town Zoning Administrator regarding the application, the Zoning Administrator provided them with the application and staff notes and Town documents created by the Town regarding the application. This includes staff notes and a draft permit approval. One of those Town-produced documents erroneously states that outdoor cultivation was contemplated by the application. Throughout trial and within their post-trial briefing, Appellants have argued that these Town-produced documents are a part of the application before the Court because they received them from the Zoning Administrator along with the application when they inquired about the application. This assertion confuses the Court. The application is the application. Additional materials created by the Town in relation to the application and its review of it are just that: additional materials created by the Town. They do not define the scope of this Court's review, and we are not bound by their contents.

[8] This is exacerbated by the fact that only one Appellant, Mrs. Vertrano, testified at trial and nearly all of her testimony consisted of an attempt to establish the boundaries of the Parker Hill Road Historic District. She did not testify or offer any evidence of impacts from the Project on the Vertrano Property or her interest. No other Appellant testified to offer any evidence as to the impacts from the Project on their respective properties or interest. The Vertrano's in their post-trial briefing argue that there will be odors from the Project, presumably that will be detectable in some fashion. This assertion is made without any support by evidence in the record.

Thus, we conclude that the Project complies with each of the required conditions of § 30-596(1)—(9). It is therefore a permissible home business that may occur in the Garage subject to conditional use review, discussed below, and we answer Question 1 in the negative.

## II. Question 2: Undue Adverse Impact

Question 2 addresses whether the Project complies with Regulations § 30-723(d)(2). Section 30-723(d)(2) requires that applications for conditional use review "shall not have an undue adverse effect on . . . the character of the area affected." Character of the area is "defined by the purposes of the zoning district within which the project is located, and specifically stated policies and standards of the town plan." Regulations § 30-723(d)(2). Considerations of a project shall include "the location, scale and intensity of the proposed project relative to the use and character of adjoining properties and other properties likely to be affected by the proposed use." Id.

Appellants raise several allegations as to why the Project would not comply with § 30-723(d)(2).[9] First, they argue that the Project does not comply due to alleged advertisement about the location of the project. Even assuming *arguendo* that this advertisement is occurring, it is irrelevant under § 30-723(d)(2). This section is related to how a project fits within the context of the area in which it is located. Appellants' allegation of public advertisement does not relate to this issue. No on-site signage or advertisement is proposed by this application. Further, Appellants appear to argue that Applicant's website posts the Property's address. The Court fails to see how the posting of this information on the internet would make the land development before the Court impact the physical character of the area in which it is located.

Appellants next argue that the Project will have an undue adverse impact on the character of the area due to the fact that surrounding properties are within a national historic district. The Parker Hill Historic District is not regulated by the Regulations. Section 30-723(d)(2) addresses impacts to the character of the area as defined by the relevant zoning district, not by a national historic district that is not a part of the Regulations. Appellants point to no relevant provision of law that would make surrounding properties inclusion in a national register historic district relevant under § 30-723(d)(2). Even if it were, however, the Project does not propose off-site impacts and Appellants do not allege any such impacts. The Project proposes to use the internal portion of an existing structure, the

---

[9] Appellants in their post-trial brief argue that the Project will have an undue adverse impact on the character of the area because Applicant does not have an Act 250 permit. This argument is outside the scope of Appellants' Statement of Questions and the Court need not address it. See In re Garen, 174 Vt. 151, 156 (2002). Further, Appellants point to no provision of law that would require Applicant to have an Act 250 permit to apply for the zoning permit. To the extent that Appellants assert that such a permit is required, the Court cannot in this de novo review of a municipal zoning permit issue an advisory opinion as to what other permits Applicant may, or may not, require.

Garage, for cannabis cultivation. The Property will remain Applicant's primary residence. No exterior modifications are proposed to the Garage or the Property, generally, beyond replacing existing exterior lights and cameras for security purposes. Applicant is the sole employee, though there is a potential for two more employees during harvest. As such, there are negligible changes to the Property that could have an impact to this historic district or surrounding properties.[10]

Additionally, Appellants appear to assert that the Project will have an undue adverse impact on the character of the area because it is not agricultural and is instead a "commercial use." They raise this issue both pursuant to 7 V.S.A. § 869[11] and the purpose of the RA-5 District.

Finally, Appellants assert that the Project does not comply with the purpose of the district such that there will be an undue adverse impact on the character of the area. The Property is within the RA-5 District. The purpose of this district is to:

> [E]ncourage economical agricultural activities, and allow for low-density housing patterns. It shall be the policy of the town to encourage development in these areas in the manner that will best protect the agricultural and rural potential of the district. This may be accomplished through cluster development or development for residential purposes of that land which is marginal for agricultural use.

Regulations § 30-122.

To the extent that Appellants assert that only agricultural uses may be permissible in this district, this is an overly narrow interpretation of the Regulations and mischaracterizes the application before the Court. The RA-5 District allows for agricultural and residential uses.[12]

Further, to the extent that Appellants argue that the Project has an undue adverse impact on the character of the area because it is a "commercial use," the Court disagrees. While a home business is inherently a business and to some extent "commercial," they are, by definition, related to a residential use of a property and a subset thereof. Residential uses are consistent with the purpose of the RA-5 District. The Property is in residential use as Applicant's primary residence. For the reasons set forth above, the Project is a home business, which is predicated upon the fact that the Property is

---

[10] Again, no Appellant provided any testimony to countervail Applicants presentation that this Project is limited in scope and scale such that there will be no undue adverse impact to the character of the area.

[11] Appellants' assertion related to § 869 is based on their interpretation of the provision. Because we conclude that the RA-5 District is not limited to agricultural uses, we need not address their interpretation of § 869 and how this Project could or could not qualify as an agricultural use under relevant law.

[12] The Court notes that the Regulations set forth allowable uses in the district that include non-agricultural or residential uses, such as a daycare facility and animal hospitals. See Regulations § 30-123.

9

Applicant's residence. The application before the Court proposes no external changes to the Property or impacts from the Project.[13]

Thus, the Project will not result in an undue adverse impact on the character of the area. We therefore answer Question 2 in the negative.

## III.  Question 3: Conditions

Finally, Appellants request that this Court impose a series of conditions on advertisement and mail related to Applicants' business. They are:

> D.4. Applicant shall not:
> a. use or post, or authorize any person or entity to use or post, any signage or advertising indicating any activity concerning cannabis at 181 Parker Hill Road, Springfield, VT;
> b. sell, or advertise the sale of, cannabis or cannabis-related products at 181 Parker Hill Road, Springfield, VT; or
> c. post anywhere on the Internet any indication of activity concerning cannabis at 181 Parker Hill Road, and[;]
> d. remove from the Internet any such current indication.
> D.5. Applicant shall obtain and use a post office box for all mail communications concerning cannabis cultivation or processing at 181 Parker Hill Road, Springfield, VT.
> D.6. Applicant shall not have any mail or other delivery by Federal Express, UPS, courier, or other delivery service addressed to Parker Hill Cannabis or any other address referring or indicating cannabis or marijuana.

Amended Statement of Question (Filed on January 2, 2024).

Appellants point to no provision of the Regulations that would allow the Court to place these conditions upon the Project. Further, Applicant proposes no signage relative to the Project. Finally, to the extent that Applicant retains a website for the business and, somewhere on the website the Property address is posted, that disclosure is required by State law. The Zoning Administrator further testified that the Town lacks the authority to enforce any of these proposed conditions through local zoning. For all of these reasons, and with consideration to the scope of the application before the Court, the conditions proposed would be unreasonable to impose.

As such, we decline to impose any of the proposed conditions within Question 3.

---

[13] Appellants in their briefing argue that the Project will cause "objectionable odors." For the reasons set forth above, their assertion is unsupported by the evidence before the Court.

## Conclusion

For the foregoing reasons, we answer each of Appellants' Questions in the negative. In so doing, we conclude that the Project is a permissible home business that may occur within the Garage at the Property.

This concludes the matter before the Court. A Judgment Order accompanies this Decision. Electronically signed 14th day of February pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division